# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# EASTERN DIVISION

| | |
|---|---|
| **LAURA LANGLEY, through her parents and next friends, Charles Langley and Kathy Langley, and CHARLES LANGLEY AND KATHY LANGLEY, Individually** | **PLAINTIFFS** |
| **V.** | **CASE NO. 1:05CV40** |
| **MONROE COUNTY SCHOOL DISTRICT** | **DEFENDANT** |

## MEMORANDUM OPINION

This cause comes before the Court on the defendant's motion [27-1] for summary judgment. The Court has reviewed the briefs and exhibits and is prepared to rule.

In 2004-2005, plaintiff Laura Langley ("Laura") was a senior at Smithville High School in the Monroe County School District ("MCSD"). Laura was generally known to be a good student, had never previously had any disciplinary problems, and was involved in extracurricular activities such as slow and fast pitch softball and cheerleading. On September 14, 2004, Laura got in her car in order to go to school. However, her car would not start. Her mother, Kathy Langley ("Kathy"), allowed Laura to take her car instead. Laura drove her mother's car to Hatley, where she got a ride with her friends to her nursing class at the vo-tech center in Becker. After the nursing class was over, Laura's friends returned her to her mother's car and Laura drove to the Smithville High School campus to attend the rest of her classes.

At some point during the morning, Assistant Principal Chad O'Brian ("O'Brian") went to the parking lot to check parking decals. He noticed that Kathy's car did not have a decal and looked inside the car to see if it had fallen on the floor. While looking for the decal, O'Brian saw

an open can of beer. He opened the car door, found that the can was approximately one quarter to half full, then informed Principal Sam Wilson ("Wilson") of his discovery.

Wilson and O'Brian called Laura to the parking lot, and she denied having any knowledge that the beer can was in the car. She claimed she was unable to see the can as she was driving. She then surmised that the beer can belonged to her mother. Laura and Wilson went to the principal's office, where Wilson then called the superintendent, Jimmy Dahlem ("Dahlem"). After speaking with Dahlem, Wilson called Kathy and the police. Laura was charged with but subsequently found not guilty of possession of an alcoholic beverage. Kathy was informed of the situation and was also told that Laura would be assigned to alternative school for thirty days. Kathy asserted that the beer can belonged to her, and Wilson told Kathy that the punishment could be appealed.

Laura was suspended from school on September 15, 2004. That same day, Laura, Kathy, Laura's father, Charles Langley ("Charles"), and their attorney, Julian Fagan, met with Superintendent Dahlem. The decision to send Laura to the alternative school was upheld, and the Langleys requested a hearing before the school board. On Tuesday, September 28, 2004, the school board held a hearing before Monroe County School Board members Patsy Huskey, Terry Collums, Tony Dill, and Barry Thompson. Others present included Dahlem, Wilson, O'Brian, school board attorney Henry Applewhite, Laura, Kathy, Charles, and Thomas Brahan, the Langleys' new attorney. At the close of testimony, the board members and the school board attorney held an executive meeting, finding that 1) the can was found in the car; 2) beer was in the can; 3) the car was on Monroe County school property; and 4) Laura did drive the car on campus. The school board then voted to affirm and approve the action of the principal and

superintendent regarding Laura's assignment to the alternative school for thirty days.  Prior to the school board hearing, Laura had attended alternative school in Hatley from September 20-24, 2004.  Laura did not return to the alternative school after the hearing, and sadly, subsequently withdrew from Smithville High School on October 4, 2004, in order to pursue a GED.

On February 1, 2005, the Langleys filed the instant action alleging violation of Laura's Fourteenth Amendment Due Process rights, violations of Mississippi law, and that the entire Langley family has suffered mental anxiety and emotional stress.  The defendant moves for summary judgment on these issues.

## ANALYSIS

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  An issue of material fact is genuine if a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).  In reviewing the evidence, this Court must draw all reasonable inferences in favor of the nonmoving party, and avoid credibility determinations and weighing of the evidence. *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 2110, 147 L.Ed.2d 105 (2000).  In so doing, the Court must disregard all evidence favorable to the moving party that the jury is not required to believe. *Reeves*, 120 S.Ct. at 2110.

1.  <u>Standing and Due Process</u>

The defendant alleges that Laura Langley does not have standing to bring a claim under the Due Process Clause of the 14th Amendment because the decision made by the Monroe County School District to send Laura to alternative school does not implicate any property interest. When a lawsuit arises in the context of a school disciplinary action, a federal court is not automatically deprived of jurisdiction to review potential constitutional violations. *Riggan v. Midland Indep. School Dist.*, 86 F.Supp.2d 647, 653-54 (W.D. Tex. 2000). Protected interests in property are not normally created by the Constitution. *Goss v. Lopez*, 419 U.S. 565, 572, 95 S.Ct. 729,735, L.Ed.2d 725 (1975). Rather, they are created....by an independent source such as state statutes or rules entitling the citizen to certain benefits. *Goss*, 419 U.S. 572-73. Under Miss. Code Ann. § 37-1-2(f), Mississippi has promised to provide quality education for all school-age children in the state; therefore, Laura does have a property interest in her education. While the defendant cites to cases such as *Nevares v. San Marcos Consol. Indep. School Dist.*, 1997 U.S. App. LEXIS 14955, (5th Cir.) and *Zamora v. Pomeroy*, 639 F.2d 662 (10th Cir. 1981), which stand for the proposition that assignment to an alternative school does not affect a property interest in education; the court finds that the factual allegations in the instant case are more analogous to the facts and reasoning in *Riggan v. Midland Indep. School Dist.*, 86 F.Supp.2d 647 (W.D. Tex. 2000). In *Riggan*, the court noted that the Fifth Circuit found in the aforementioned cases that those plaintiffs were not denied access to public education which caused a protected property interest not to be implicated by assignment to alternative school. *Id.* at 655. While the court in *Riggan* held that the plaintiff had standing to bring a claim because of the totality of his punishment and not solely because of his assignment to the alternative education program that he alleged denied his access to education, the crux of the analysis of other cases and discussion as

4

it related to protected property interests in *Riggan* related to the exclusion from the educational process. Laura has alleged that she received no educational instruction at the alternative school. While yet unproven, Laura has sufficiently implicated a protected property interest, so the court now examines the adequacy of process undertaken by the MCSD and whether Laura suffered a violation of any property interest.

      a. Procedural and Substantive Due Process

The fundamental requisite of due process is the opportunity to be heard. *Id*. at 579. Parties whose rights are to be affected are entitled to be heard, and in order to enjoy that right they must first be notified. *Id*. (quoting *Baldwin v. Hale*, 1 Wall. 223, 233, 17 L.Ed. 531 (1864)). *Goss* holds that for suspensions of ten days or less, a student must be given oral or written notice of the charges, and if the student denies the charges, the student must then be given an explanation of the evidence the authorities have and opportunity to explain his or her side of the story. *Id*. at 581. There does not need to be a delay between the time notice is given and the time of the hearing as long as it precedes removal from school. *Id*. at 582. However, *Goss* acknowledged that its holding addressed short suspensions, and that more severe penalties may require more formal procedures. *Id*. at 584.

In the instant action, Laura was only suspended from school for one day before she was placed in the alternative school. Under *Goss,* Laura received adequate procedural process as it relates to her one day suspension since the school principal and vice-principal spoke with Laura about finding alcohol in the vehicle she drove to campus and allowed her to explain herself. In regards to Laura's placement in alternative school for thirty days, the plaintiffs do not allege that Laura did not receive process but rather that the process was compromised because the school

5

board attorney served as a prosecutor and then accompanied the Monroe County School Board into its executive session after Laura's hearing. They also allege that the hearing before the school board was merely a ratification of the decisions made by the principal and superintendent, with no independent deliberation.

Courts have found that attorneys who serve dual roles in a hearing do not necessarily destroy the impartiality of the proceedings and render a hearing void for lack of due process. See *Lamb v. Pan Handle Cmty. School Dist.*, 826 F.2d 526 (7th Cir. 1987), *Tasby v. Estes*, 643 F.2d 1103 (5th Cir. 1981). In *Hoffman v. Board of Trustees, East Mississippi Junior Coll.*, the Mississippi Supreme Court held that in a situation where the attorneys moderated the hearing, ruled on objections and procedural matters, and retired with the Board of Trustees to deliberate, there are no grounds for complaint unless it can be shown in fact that the attorney did corrupt or otherwise destroy the impartiality of the process. 567 So.2d 838, 841 (Miss. 1990). While this court is concerned about the method in which the board deliberations occurred, the plaintiffs have made no showing of actual corruption to sustain a violation of procedural due process.

Substantive due process violations occur when a law or governmental act is not reasonably related to its end. *Brennan v. Stewart*, 84 F.2d 1248, 1256 (5th Cir. 1988). The defendant argues that there is no requirement in the school handbook that a student must knowingly possess alcohol to be subject to the penalties therein. The defendant cites to *Bundick v. Bay City Indep. School Dist.,* 140 F.Supp. 2d 735, 740 (S.D. Tex. 2001), in which the court found that scienter was not a requirement of the school's policy and the policy was entitled to deference. The court further found that it was not irrational to find that Bundick knew, even if he forgot, of the weapon's presence. *Bundick*, at 740. However, the facts in *Bundick* are

6

distinguishable since the student put the weapon in his vehicle when he worked, he had worked the day before, and forgot to take it out of the vehicle when he went to school. *Id*. The other case that the defendant cites, *Butler v. Rio Rancho Public Schools Board of Educ.*, 341 F.3d 1197 (10th Cir. 2003), involved a weapon that was in plain view.

The plaintiff cites to the Sixth Circuit opinion in *Seal v. Morgan*, in which school officials at a school with a zero-tolerance policy found a weapon in a student's vehicle. 229 F.3d 567 (6th Cir. 2000). The student had no knowledge that the weapon was in the vehicle and the court found that a reasonable trier of fact could find that the student was expelled for an irrational reason. *Id*. at 579-80. The plaintiff also cites *Colvin v. Lowndes County, Mississippi School Dist.*, which, in its analysis of *Lee v. Macon County Board of Education,* 490 F.2d 458 (5th Cir. 1974), stated that the Fifth Circuit's intent in that case was to ensure that school boards fully consider the circumstances surrounding the misdeed and as well as the penalty to be imposed in an effort to provide students with full due process. 114 F.Supp.2d 504, 512 (N.D. Miss. 1999). In light of the fact that the plaintiffs have presented evidence to indicate that the principal and vice-principal did not believe that Laura knew the beer can was in the vehicle, and the fact that the MCSD has not produced a policy outlining the time period that a student should be sent to alternative school, this court finds that there is a sufficient jury question as to whether Laura's penalty was rationally related to the school boards interests.

2.  Violations of Mississippi Law

The plaintiffs have alleged that the defendant has failed to follow state law. The claim for failure to follow procedure for assignment to alternative school under Miss. Code Ann. § 37-13-92 must fail because at the time of discipline Laura was no longer a compulsory school age child.

7

The statute is inapplicable. The plaintiffs also allege that the MCSD violated Mississippi law by refusing to provide Laura with a public education in violation of Miss. Code Ann. § 37-13-91. While Miss. Code Ann. § 37-1-2(f) states that it is the state of Mississippi's policy to provide quality education for all school age children, Miss. Code Ann. § 37-13-91 refers to compulsory school age children. The statute is inapplicable. Since the plaintiffs have not alleged a viable state law claim, the court will not address the defendant's claim of immunity under the Mississippi Tort Claims Act.

3. Mental Anxiety and Emotional Distress

The plaintiffs contend that Charles and Kathy Langley suffered mental anxiety and stress, not as bystanders to the actions taken by the MCSD with respect to their daughter, but as direct participants. The plaintiffs' brief does not elaborate on the reasoning that led to the conclusion that Charles and Kathy were direct participants to the actions. Review of the submitted briefs and exhibits indicate that while Charles and Kathy were concerned and involved parents, the actions taken by the MCSD only related to Laura. Therefore, while there is enough evidence to present a jury question as to mental anxiety and stress suffered by Laura as a direct participant, Charles and Kathy have failed to create a jury question on that matter.

4. Mitigation/Limitation of Damages Due to Laura's Withdrawal from School

The MCSD contends that Laura failed to mitigate her damages, that many of her claimed damages were in fact due to her own actions, and requests that the issue of damages be limited to the time frame in which Laura attended alternative school. At this juncture, the court declines to limit the time frame for damages, but finds that it is a question more appropriately put before a jury.

## CONCLUSION

ACCORDINGLY, the defendant's motion [27-1] for summary judgment in GRANTED IN PART and DENIED IN PART.

The defendant's motion for summary judgment on the due process claim is DENIED with respect to substantive due process.

The defendant's motion for summary judgment on the state law claims is GRANTED.

The defendant's motion for summary judgment on the mental anxiety and emotional distress is GRANTED with respect to Charles and Kathy Langley and DENIED with respect to Laura Langley.

This the 2nd day of October, 2006.

                                           **/s/ Michael P. Mills**
                                           **UNITED STATES DISTRICT JUDGE**